## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

AIMEE MCREYNOLDS                                          PLAINTIFF

v.                                          CIVIL NO. 1:16-CV-318-HSO-MTP

THOMAS M. MATTHEWS, III,
MATTHEWS & MATTHEWS, PLLC,
AND JOHN AND JANE DOES 1-5                               DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION [120] FOR SUMMARY JUDGMENT</u>

BEFORE THE COURT is the Motion [120] for Summary Judgment filed by Defendants Thomas M. Matthews, III and Matthews & Matthews, PLLC ("Matthews"). In this case, Plaintiff Aimee McReynolds ("McReynolds") brings a legal malpractice claim against Matthews relating to the administration of the *Estate of Jack Dick, Deceased*, Cause No. 2013-0065-PR-G, in the Chancery Court of Pearl River County, Mississippi. McReynolds was the sole beneficiary under the decedent Jack Dick's handwritten Will. Shortly after Dick passed away, McReynolds retained Matthews in April 2013 to probate Dick's Will. McReynolds claims that Matthews failed to administer the Estate in a timely and proper manner, causing her to suffer monetary damages.

Matthews now moves for summary judgment on several of McReynolds' claims of negligence, breach of fiduciary duty, and damages. The Motion has been fully briefed. For the reasons that follow, the Court finds that the Motion should be granted as to McReynolds': (1) breach of the standard of conduct claims; (2) claim

for damages in attorneys' fees paid to the Law Office of B. Ruth Johnson in the underlying Estate proceedings; and (3) claim for punitive damages. These claims will be dismissed.

The Court finds that the Motion should be denied as to McReynolds': (1) breach of the standard of care claim that Matthews' alleged negligence caused the Will contests by Dick's half-siblings to not be time-barred; (2) breach of the standard of care claim that Matthews' negligence caused her to be removed as Administratrix; (3) breach of the standard of care claim for lost income caused by liquidation of Dick's investments; (4) breach of the standard of care claim that Matthews caused Dick's Estate to incur higher taxes by declaring Dick a Mississippi resident; and (5) breach of the standard of care claim that Matthews caused penalties to be incurred for filing the Estate's tax returns late. These claims will proceed to trial.

## I. BACKGROUND

A.    Factual Background

1.    McReynolds Meets and Befriends Jack Dick

In December 2008, 80-year-old Jack Dick met McReynolds at an establishment known as Arety's Angels in Pensacola, Florida, where McReynolds worked as a waitress at the time. Mar. 28, 2016 Pl. Dep. [120-1] at 25. The two became friends; according to McReynolds, they loved each other "like family." May 23, 2017 Pl. Dep. [128-1] at 169-70. In August 2009, Dick began renting a room from McReynolds at her home in Pensacola. In exchange, Dick paid McReynolds'

mortgage. *Id.* at 23, 46. Up until March 2013, Dick would stay overnight in his bedroom at McReynolds' home for seven to fourteen days each month. *Id.* at 23-24. Dick spent the remainder of his time at his property in Pearl River County, Mississippi. *Id.*; Hearing Tr. [120-3] at 20-21.

Starting in 2009, Dick gave McReynolds spending money in the amount of "$100 on occasion." Mar. 28, 2016 Pl. Dep. [128-18] at 148. Before Dick died, he was supplying McReynolds with $500 a week. On June 28, 2012, Dick executed an entirely handwritten, "holographic" Will naming McReynolds his sole beneficiary. Dick's Will [120-5]. This Will listed Dick's property, including a "brokerage account" of "two million" dollars. *Id.* Dick passed away on March 31, 2013. Death Certificate [120-2].

2.    McReynolds Hires Matthews to Probate Mr. Dick's Will

On April 3, 2013, McReynolds retained Matthews to probate the Will for a flat fee of $10,000.00. May 23, 2017 Pl. Dep. [128-1] at 23, 82. That same day, Matthews filed a Petition to Probate the Last Will and Testament of Jack W. Dick, CTA,[1] in the Chancery Court of Pearl River County, Mississippi, and the Chancery Clerk recorded the original Will in the Will Book. Pet. for Probate [120-6]. The Chancellor apparently did not grant the original petition, so Matthews filed an Amended Petition. *See* Am. Pet. for Probate [128-6]. The Amended Petition stated that Dick was a Mississippi resident when he died "on the 31st day of March, 2013

---

[1]    An administrator c.t.a. or "*cum testament annexo*" is "[a]n administrator appointed by the court to carry out the provisions of a will when the testator has named no executor. . . ." Black's Law Dictionary 49 (8th ed. 2004).

or April 1, 2013." *Id.* at 1. The Amended Petition sought an order from the court authorizing liquidation of Dick's financial accounts and placement of the funds into the court's registry. *Id.* at 2.

On April 9, 2013, the Chancery Court entered its Judgment appointing McReynolds as Administratrix. April 9, 2013 Judgment [128-7]. The Judgment directed McReynolds to retain an appraiser and file all necessary inventories, appraisals, and final accounts as required by state law. *Id.* at 2. In lieu of McReynolds filing an additional bond, the court ordered the liquidation of Dick's financial accounts to be deposited into the court's registry. *Id.* The Judgment did not state that Dick's Will was probated nor did it include the word "probate." *Id.* at 1-2.

On April 9, 2013, Matthews became aware of Charles Dick, Jack Dick's half-brother, and that he possibly would contest Dick's Will. Def. Dep. [128-4] at 69. As part of an attempt to determine if Charles would challenge the Will, Matthews told Charles that Dick's estate was worth in excess of $2 million. *Id.* at 72.

3.    McReynolds Terminates Matthews

McReynolds contends that after October 2013, she had minimal communication with Matthews despite her numerous attempts to contact him. Pl. Aff. [128-8] at ¶ 4. According to McReynolds, she emailed Matthews monthly from August 2014 to February 2015. *Id.* McReynolds also testified that she called Matthews but could never reach him. May 23, 2017 Pl. Dep. [128-1] at 116. McReynolds stated that she had "six or seven different phones in the course of four

4

years," but lived at the same address and had the same e-mail address during the time Matthews represented her.  *Id.* at 118;  Pl. Aff. [128-8] at ¶ 4.

On March 3, 2015, McReynolds sent a letter to Matthews, terminating his services effective immediately, and indicating her new representation by the law firm of Copeland, Cook, Taylor & Bush, P.A. ("Copeland").  Letter [120-13].  On April 10, 2015, Copeland, on behalf of McReynolds, filed in the Chancery Court a Petition to Admit Will to Probate Nunc Pro Tunc to April 9, 2013.  Pet. [128-14].  The Petition took the position that "[t]hrough error and/or oversight, the Judgment entered on April 9, 2013, does not formally admit to probate the holographic" Will.  *Id.* at 1.  McReynolds suggested that the Will "was, in fact, admitted to probate on April 9, 2013, but the Judgment simply mistakenly neglected to state so."  *Id.* at 2.  The Petition sought from the Chancery Court a decree that the Will "was in fact admitted to probate" on April 9, 2013, and "that the two-year statute of limitations for any contests of the [Will] shall have begun to run on April 9, 2013[.]"  *Id.*

On April 13, 2015, the Chancery Court entered a Decree Admitting Will to Probate Nunc Pro Tunc to April 9, 2013.  Decree [128-15].  The Chancery Court found that the Will "was, in fact, admitted to probate on April 9, 2013, but that the Judgment simply mistakenly neglected to state so."  *Id.* at 2.  The Decree ordered that the Will be admitted to probate effective April 9, 2013, and that the two-year statute of limitations for any contests to the Will began to run on April 9, 2013.  *Id.*

One week later, on April 20, 2015, McReynolds petitioned the court for a $100,000.00 loan from the Estate.  Pet. to Borrow Funds [128-17].  McReynolds

asserted that "[d]ue to health problems, [she] has not worked since mid-2014, and she is currently falling behind on many of her personal bills and expenses," including owing $70,164.45 on her mortgage, "which amount must be paid on or before May 5, 2015, in order to avoid foreclosure." *Id.* at 2. At a hearing held on April 21, 2015, the Chancery Court denied the Petition to Borrow Funds. *See* Letter to Chancery Ct. [120-38] at 1.

4. <u>The Chancery Court Removes McReynolds as Administratrix and Probates the Will in Solemn Form</u>

On May 7, 2015, the Chancery Court held another hearing with McReynolds. Hearing Tr. [128-11] at 1-2. The court stated: "Let me tell you why you-all are here. The Court will sua sponte, on its own, set aside its orders validating the holographic will." *Id.* at 2. The court noted that under Mississippi law, an inventory must be prepared and filed within ninety days of the grant of letters of administration appointing an estate's administrator. *Id.* at 2-3. The Chancery Court inquired of McReynolds whether she had prepared an inventory, and McReynolds replied, "I was not informed that I was supposed to prepare one." *Id.* at 6.

The court observed that the "petition indicated that Mr. Dick departed this life on the 31st day of March 2013 or April 1st, 2013." *Id.* at 3. The court asked for a copy of the death certificate to verify Dick's date of death, but neither McReynolds nor her counsel had one. *Id.* at 3-4. The court next noted that the Will was notarized on June 28, 2012, but was not prepared until one day later on June 29, 2012. *Id.* at 5. The court stated that "though holographic wills are not required to be dated, when one is in fact dated, the Court has to take notice of it." *Id.*

6

The court asked of McReynolds whether she had complied with the April 9, 2013 Judgment, including the order to retain the services of an appraiser. *Id.* at 7. McReynolds responded, "Actually, ma'am, Mr. Matthews told me he would do it. I asked him if I were to do it and he said he would handle it and get the appraisal done." *Id.* The Chancery Court told McReynolds that she "failed to comply with the order of this Court," and "will be immediately removed and replaced[.]" *Id.* The court ordered the Will to be probated in solemn form and for "a notice sent out for any and all heirs at law known and unknown, [as] that process was never completed." *Id.* at 10.

The Chancery Court set aside "any decrees entered by this Court admitting this will to probate; namely, the order dated April 13, 2015," and the "decree validating holographic last will and testament of Jack Dick[.]" *Id.* at 11. The court did so based on the court's "in-camera review" of the record prior to the hearing and because the Will "is dated June 29, 2012; however, it is executed a day prior to its preparation, so the Court has concerns as to the validity of it." *Id.* at 11.

On May 15, 2015, the Chancery Court entered an Order that incorporated its rulings at the May 7, 2015 hearing. Order [128-10]. The Order noted that "to date, no inventories, appraisals, or accounts have been filed in this Estate proceeding, and no funds relating to this case have been tendered into the Court Registry." *Id.* at 2. The Court expressed its "concerns regarding, inter alia, the fact that the exact date of death of Jack W. Dick is unknown" and that the Will "is dated 'June 29, 2012' on top of the first page, but the attestation by the notary public on the second

7

page is dated 'June 28, 2012.'" *Id.* The Chancery Court Order: (1) set aside the decrees admitting the Will to probate and validating the Will; (2) probated the Will in solemn form; and (3) removed McReynolds as Administratrix. *Id.* at 3.

     5.   <u>McReynolds Hires New Counsel and Defends against the Will Contests</u>

After McReynolds was removed as administratrix, Copeland advised her that she needed to hire another attorney. Pl. Aff. [128-8] ¶ 21. On October 9, 2015, McReynolds retained her present counsel, the Law Office of B. Ruth Johnson ("Johnson"), on a contingent fee basis and signed a 1% contingency fee agreement. Fee Agreements [120-23] at 1. On October 13, 2015, Mr. Dick's two half-siblings initiated a contest to the Will. Resp. to Pet. to Probate Will [120-22]. McReynolds subsequently amended her contingency fee agreement with Johnson, increasing the fee three times: first, to 15% on October 20, 2015; second, to 25% on March 28, 2016; and finally third, to 33 1/3% on May 31, 2016. Fee Agreements [120-23].

On July 11, 2016, McReynolds settled the will contest for $85,000.00. Settlement Statement [120-24]; Chancery Ct. Docket [128-13] at 8. McReynolds paid Johnson over $800,000.00 to defend the will contest and represent her in the Estate proceedings. Hines Report [120-25] at 14. On July 19, 2016, the Chancery Court entered a Decree Closing Estate, and on August 1, 2016, McReynolds received the remaining funds held in the court's registry. Chancery Ct. Docket [128-13] at 9; Pl. Aff. [128-8] ¶ 28.

B.    Procedural History

1.    McReynolds' Complaint

On April 8, 2016, McReynolds filed a Complaint alleging legal malpractice against Matthews in the Circuit Court of Pearl River County, Mississippi.  Compl. [1-1].  Matthews was not served until July 28, 2016.  Not. of Removal [1] at 3. Matthews removed the case to this Court on the basis of diversity jurisdiction on August 26, 2016.  *Id.* at 1-2.

On January 9, 2017, McReynolds filed an Amended Complaint.  Am. Compl. [14].  Central allegations include that "[f]rom October 23, 2013 through March 16, 2015, Matthews failed to communicate with McReynolds, filed no pleadings on behalf of McReynolds, and took no action toward concluding the probate of Dick's Will."  *Id.* at 4.  McReynolds advanced claims of breach of fiduciary duty and negligence.  Regarding her negligence claim, McReynolds alleged that Matthews negligently:  (1) failed to have Dick's tax returns timely filed, which caused the Estate to incur penalties; (2) had the income earning account of Dick liquidated and deposited into a non-income earning account, which caused Dick's estate to forego "a substantial amount of income and dividends from June 16, 2015 through closing of the Estate;" and (3) failed to probate Dick's Will in common form, and but for this act, the contest of Dick's half-siblings would be time-barred and McReynolds would not have incurred attorneys' fees to represent her interest in the Estate.  *Id.* at 10-12.

McReynolds' breach of fiduciary duty claim asserts that Matthews breached this duty by failing "to have Dick's state and federal tax returns timely filed and to timely pay the state and federal taxes owed by Dick," which caused the Estate to "incur[] penalties and interest expenses," and by "[h]aving the income earning account of Jack W. Dick liquidated and deposited into a non-income earning account creating unnecessary tax consequences and foregoing substantial income and dividend earnings." *Id*. at 8-9. The Amended Complaint seeks compensatory and punitive damages. *Id.* at 12.

2.  McReynolds' Experts

On April 10, 2017, McReynolds timely designated two experts, Robert E. Williford, Esq. ("Williford"), and Joseph E. Hines, CPA, MAFF, CFF ("Hines), and submitted their reports. Designation of Expert Witnesses [126-5] at 1. Williford was designated as an expert on "the legal, ethical and fiduciary duties of an attorney in the administration of estates," *id.* at 4, while Hines was tendered to offer expert testimony in the fields of accounting and financial analysis, *see id.* at 28, 59. Williford's timely April 10, 2017 report ("First Report") opined as to Matthews' duties and breaches, *id.* at 7-20, and took the position that had the Estate been properly opened and administered, the later challenges to the Will would have been barred by the applicable two-year statute of limitations, *id.* at 7.

On June 15, 2017, Matthews identified Lawrence Gunn, Esq. ("Gunn") as an expert. Suppl. Answers to Pl.'s First Set of Interrogs. [117-2] at 2-3. Matthews advised that "Gunn is expected to testify the fees and expenses paid by McReynolds

to the Law Office of B. Ruth Johnson, PLLC were excessive and unreasonable." *Id.* at 6. On June 30, 2017, McReynolds disclosed to Matthews a Supplement to Report of Williford ("Second Report"). Williford Suppl. to Rep. [117-3]. After Williford's Second Report noted that Matthews expected Gunn to testify that McReynolds' attorneys' fees were unreasonable, it then offered a countering opinion, for the first time, that McReynolds' attorneys' fees were reasonable. *Id.* at 2.

On July 10, 2017, Matthews formally designated Gunn and disclosed his report, in which Gunn stated that "the amount of fees Ms. McReynolds paid to the Law Office of Ruth B. Johnson was unreasonable." Gunn Report [117-2] at 6. On July 20, 2017, McReynolds designated John G. Corlew, Esq. ("Corlew") as a rebuttal expert and submitted his "Rule 26(a)(2) Report." Designation of Expert Rebuttal Witness [126-9] at 1. McReynolds retained Corlew to address Gunn's opinions regarding the reasonableness of her attorneys' fees. *Id.* at 3. Corlew asserted in his report that "those fees were reasonable." *Id.*

Matthews moved to strike the proffered testimony of Corlew and the opinions contained in Williford's Second Report, Mot. [117] at 1, arguing that Corlew's designation and Williford's Second Report occurred beyond the deadlines established by the Case Management Order, Defs.' Mem. [118] at 5. Matthews contended that it was McReynolds' burden to prove the reasonableness of attorneys' fees as an essential element of her damages claim; therefore, McReynolds could not fill in the missing gaps in Williford's timely First Report by untimely designating Corlew or improperly supplementing Williford's report. *Id.* at 7-9.

In an Order [140] entered on November 20, 2017, this Court found that "under Mississippi law, a showing of reasonableness is an essential element of McReynolds' damages claim for attorneys' fees, but her experts failed to put forth any evidence of the reasonableness of those fees by her expert designation deadline." Order [140] at 10. Accordingly, "Corlew is not a proper rebuttal witness and his late designation violates the Case Management Order[.]" *Id.* With regard to Williford's opinions on the matter, because his timely First Report did not contain any opinion or reference as to the reasonableness of these fees, "Williford's Second Report as to the reasonableness of attorneys' fees cannot be viewed as a valid or proper supplement[.]" *Id.* at 11-12. The Court struck Corlew's testimony and Williford's Second Report as to the reasonableness of attorneys' fees, given the particular circumstances and posture of the case. *Id.* at 15.

3.   Matthews' Motion for Summary Judgment

a.   Matthews' Arguments

Matthews now moves for summary judgment on many of McReynolds' claims. Mot. [120] at 1. According to Matthews, the Chancery Court had no authority to set aside the probate of Dick's Will, and because McReynolds failed to appeal that decision, Matthews cannot be responsible for any resulting damages. Defs.' Mem. [122] at 14. Even if the Chancery Court did possess such authority, Matthews contends that it would be impermissible to review that decision. Further, Matthews claims that there is no admissible evidence that the Chancellor set aside the probate because of Matthews' conduct. *Id.* at 16-17.

Matthews maintains that the proximate cause of any alleged loss of income and dividends from liquidating Dick's investment account cannot be attributed to him because McReynolds' Amended Complaint claims such damages began accruing on June 16, 2015, but Matthews was terminated on March 3, 2015. *Id.* at 17. Matthews seeks dismissal of McReynolds' claim that Matthews negligently designated Dick as a Mississippi resident for tax purposes because McReynolds represented in open court that Dick was a Mississippi resident. *Id.* at 18. Matthews also seeks dismissal of McReynolds' claim that Matthews failed to timely file the Estate's tax returns because there is no evidence that Matthews did not meet the applicable standard of care concerning the timing of filing the returns. *Id.*

Matthews requests summary judgment on McReynolds' breach of fiduciary duty claims for Matthews designating Dick as a Mississippi resident, liquidating Dick's investments, and telling Dick's half-brother of the existence and value of Dick's Estate. *Id.* at 20-21. Matthews argues that these are merely negligence claims masquerading as breach of fiduciary duty claims and McReynolds cannot show that these alleged fiduciary breaches caused her any damages. *Id.*

Matthews also moves for summary judgment on two of McReynolds' damages claims. Matthews first contends that McReynolds cannot present any admissible evidence that the attorneys' fees and expenses paid to Johnson incurred in the Estate proceedings were reasonable and thus summary judgment is proper as to those claimed damages. *Id.* at 9-11. Next, Matthews asserts that McReynolds

cannot prevail on her punitive damages claim as there is no evidence that Matthews acted with malice, reckless disregard, or gross neglect. *Id.* at 22.

      b.    <u>McReynolds' Response</u>

In response to Matthews' argument that the Chancery Court had no authority to set aside the probate of the Will, McReynolds notes Williford's opinion that a Chancellor "can pretty much do whatever they want when they're on the bench." Pl.'s Mem. [129] at 23. McReynolds also points out that Matthews failed to cite any authority requiring her to appeal the Chancellor's May 15, 2015 Order, and Matthews has not filed a cross-claim against Copeland for its alleged neglect in not seeking appellate review. *Id.* at 22. Assuming the Chancery Court did have authority to set aside the probate, McReynolds takes the position that she carries no burden to show that Matthews' negligence caused the Chancellor to enter the May 15, 2015 Order. Rather, but for Matthews' failure to properly probate the Will in the first place, there would have been no need for the *nunc pro tunc* decree entered on April 13, 2015, and the May 15, 2015 Order setting aside that decree would not have been entered. *Id.* at 25.

Regarding her claim for lost income and dividends allegedly caused by Matthews liquidating Dick's investments, McReynolds now takes the position that Dick's investment account would have earned interest and dividends from February 11, 2015, through August 1, 2016, and not from June 16, 2015, through closing of the Estate, as alleged in the Amended Complaint. *Id.* at 26. To support her claim that Matthews negligently declared Dick a Mississippi resident for tax purposes,

McReynolds contends that soon after she retained Matthews, she provided Matthews with Dick's brokerage statement and previous tax returns in which Dick declared himself a Florida resident. *Id.* at 29. McReynolds also points to Williford's testimony that Matthews breached his duty to advise McReynolds regarding the necessity of timely filing Dick's tax returns. *Id.* at 27. With respect to her breach of fiduciary duty claim related to Matthews' communications with Charles Dick, McReynolds contends that there is no evidence that Charles Dick was aware of the size of Dick's estate before Matthews disclosed that information to him. *Id.* at 30.

McReynolds maintains that reasonableness of the attorneys' fees is not an element she must prove, but in any event, she can rebut Matthews' position that the fees were unreasonable through her experts' testimony. *Id.* at 18-19. Lastly, McReynolds asserts that punitive damages are proper because for more than two years, Matthews failed to conclude Dick's Estate despite repeated pleas by McReynolds for seven months when she was in need of the funds. *Id.* at 33.

## II. DISCUSSION

A.    Legal Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cox v. Wal-Mart Stores E, L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court "view[s] the evidence and draw[s] reasonable inferences in the light most favorable to the nonmoving party." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir.

2015) (quoting *Cox*, 755 F.3d at 233); *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).  Before it can determine that there is no genuine issue for trial, a court must be satisfied that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (the nonmovant must set forth specific facts to contradict the specific facts set forth by the movant, general averments are not sufficient).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).  An actual controversy exists "when both parties have submitted evidence of contradictory facts." *Salazar-Limon v. Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quotation omitted).

B.      Analysis

1.      McReynolds' Standard of Care/Negligence Claims

Mississippi recognizes two types of legal malpractice claims – one "based on negligence (sometimes called a breach of the standard of care) and those based on breach of fiduciary duty (sometimes called a breach of the standard of conduct)." *Crist v. Loyacono*, 65 So. 3d 837, 842 (Miss. 2011) (citations omitted). "To recover under the negligence theory of legal malpractice, the client must prove the existence of an attorney-client relationship, the acts constituting negligence, that the negligence proximately caused the injury, and the fact and extent of the injury." *Lane v. Oustalet*, 873 So. 2d 92, 98-99 (Miss. 2004) (citations omitted). "[A] plaintiff in a negligence-based malpractice action must establish proximate cause by the so-called 'trial-within-a-trial' test. That is to say, the client 'must show that, but for [her] attorney's negligence, [s]he would have been successful in the prosecution or defense of the underlying action.'" *Crist*, 65 So. 3d at 842 (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1215 (Miss. 1996)).

a.      Matthews' Liability for the Chancery Court Setting Aside the Probate of the Will

Matthews argues that he is entitled to summary judgment on any claim that he proximately caused the effects of the Chancery Court setting aside the probate, including McReynolds being removed as Administratrix, the Will contests not being time-barred, and the attorneys' fees incurred to represent McReynolds' interest in the Estate. Defs.' Mem. [122] at 11. Matthews presents two main positions on this issue. Matthews first argues that McReynolds cannot present any evidence that the

Chancery Court had the authority to set aside the probate, such that the burden fell upon McReynolds to appeal the Chancery Court decision if she was aggrieved by it. Since she did not, Matthews cannot be responsible for any alleged resulting damages. *Id.* at 14.

A chancery court's jurisdiction is established by the Mississippi constitution, which gives those courts "full jurisdiction in . . . [m]atters testamentary and of administration." Miss. Const. 1890, § 159. Moreover, "all facts necessary to sustain the jurisdiction or decrees of such courts are presumed to exist until the contrary appears in the record." *Coglan v. Coglan*, 18 So. 2d 149, 150 (Miss. 1944). Matthews cites no legal authority for the proposition that the Chancery Court lacked jurisdiction to enter the May 15, 2015 Order, but merely refers to a letter sent by Copeland to the Chancery Court that argued the Chancellor had no such authority. Defs.' Mem. [122] at 13. However, the statute and cases mentioned in that letter do not speak to the question of whether the Chancery Court lacked authority to enter its orders. Letter [120-28]. Matthews' argument on this point is not adequately supported by citation to legal authorities and is therefore insufficient to carry his initial summary judgment burden.

Matthews' second argument is that there is no admissible evidence that the Chancery Court set aside the probate of the Will because of Matthews' negligence. Defs.' Mem. [122] at 15. Specifically, Matthews contends that McReynolds cannot produce any evidence that Matthews is liable for the inconsistent dates in the Will. *Id.* McReynolds counters that the "inconsistencies in the dates in Dick's Will go

toward the validity of the Will which would have been time-barred as of April 9,

2015 but for Matthews' neglect and oversight in drafting the April 9, 2013

Judgment." Pl.'s Mem. [129] at 24. McReynolds also takes the position that the

May 15, 2015 Order "does not specify any findings why the *nunc pro tunc* common

form probate of Dick's Will was set aside." *Id.*

> The proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury, and without which the result would not have occurred. If another acting independently and of his own volition puts in motion another intervening cause which efficiently leads in unbroken sequence to the injuries, then the intervening cause is the proximate cause.

*Jennings v. Shuler*, 147 So. 3d 847, 854 (Miss. Ct. App. 2014) (citations and

quotation marks omitted). Williford has opined that if "Matthews had properly

drafted the Judgment entered on April 9, 2013 to probate the Will, the decedent's

heirs would have been time barred from contesting the Will after the entry of the

Judgment of April 9, 2015." Williford Report [128-16] at 15. However, any alleged

negligence of Matthews in drafting the April 9, 2013 Judgment may have been

alleviated when the Chancery Court later entered the Decree Admitting Will to

Probate Nunc Pro Tunc to April 9, 2013.

> Nunc pro tunc means "now for then." A nunc pro tunc order is used to supply omissions in the record of what had previously been done, and by mistake or neglect not entered. A judgment entered nunc pro tunc normally does not refer to a new or fresh (de novo) decision, as when a decision is made after the death of a party, but relates to a ruling or action actually previously made or done but concerning which for some reason the record thereof is defective or omitted. The entry of a nunc pro tunc order does not itself have a retroactive effect, but it constitutes the later evidence of a prior effectual act.

*McGrew v. McGrew*, 184 So. 3d 302, 308 (Miss. Ct. App. 2015) (internal citations and quotation marks omitted).

In the Decree Admitting Will to Probate Nunc Pro Tunc to April 9, 2013, the Chancery Court found that Dick's Will "was, in fact, admitted to probate on April 9, 2013, but that the Judgment simply mistakenly neglected to state so." Decree [128-15] at 2. The Decree further ordered that "the two-year statute of limitations for any contests of [Dick's Will] began to run on April 9, 2013, the date the said Will was admitted to probate." *Id.* Therefore, as of April 13, 2015, the day the court entered its Decree, not only had Dick's Will been admitted to probate, but the two-year statute of limitations to challenge the Will had expired. *See* Miss. Code Ann. § 91-7-23 ("If some person does not appear within two years to contest the will, the probate shall be final and forever binding[.]").

It was the Chancery Court that, in its own words, "sua sponte" reopened the probate and reset the statute of limitations at its hearing on May 7, 2015. As Matthews points out in his Memorandum Brief, the Chancery Court laid out its reasons for setting aside the probate of the Will in its May 15, 2015 Order:

> That this Court has concerns regarding, inter alia, the fact that the exact date of death of Jack W. Dick is unknown, as no death certificate has been filed in this Court, and that the document purported to be the holographic Last Will and Testament of Jack W. Dick is dated "June 29, 2012" on the top of the first page, but the attestation by the notary public on the second page is dated "June 28, 2012."

Order [128-10] at 2.

Nevertheless, Matthews has not carried his initial summary judgment burden of demonstrating the absence of a genuine dispute of material fact on

whether the Chancery Court set aside probate of the Will because of any negligence of Matthews. Matthews does not explain or contend how he could not be found negligent to the extent he neglected to file Dick's death certificate or clear up Dick's exact date of death with the court. Defs.' Mem. [122] at 15; Reply at 10. The Amended Petition for Probate, drafted and filed by Matthews on April 8, 2013, states that Dick "departed this life on the 31st day of March, 2013 or April 1, 2013[.]" *See* Am. Pet. for Probate [128-6] at 1. Dick's death certificate was issued on April 12, 2013, declaring Dick's date of death as March 31, 2013. Death Certificate [120-2]. At the hearing on May 7, 2015, the Chancery Court stated that it had "concerns" that the Amended Petition for Probate indicated two possible dates on which Dick died. Hearing Tr. [128-11] at 3. The court insisted, "We need to verify the date of death of the decedent if he is, in fact, deceased." *Id.* at 4. The Chancery Court asked McReynolds and Copeland for the death certificate, but neither of them could produce a copy, and McReynolds replied, "Mr. Matthews never gave me one. He ordered 15 of them and distributed them out to whoever needed them." *Id.* at 3-4.

Matthews argues that asking this Court or a jury to determine why the Chancery Court ruled the way it did would require an impermissible review of a state court decision contrary to the *Rooker-Feldman* doctrine. Defs.' Mem. [122] at 15-16 (citing *Grudzinskas v. Homeside Lending, Inc.*, 345 F. Supp. 2d 633, 639 (S.D. Miss. 2004)). "Reduced to its essence, the *Rooker–Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court

judgments except when authorized by Congress." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) (citation and quotation marks omitted). The United States Supreme Court has held that the *Rooker-Feldman* doctrine is narrowly confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is inapplicable here for several reasons. This case was not brought by a state-court loser. McReynolds settled the contests to the Will, closed the Estate, and received her inheritance. McReynolds is not complaining of injuries caused by any state court judgment, rather, she is complaining of injuries caused by Matthews' allegedly negligent legal representation. Furthermore, attempting to ascertain the reasons the Chancery Court articulated for its orders is not the same thing as making a finding that a state court judgment is invalid.

Matthews argues that he is entitled to summary judgment on any claim that he proximately caused McReynolds' removal as Administratrix. Defs.' Mem. [122] at 11. Matthews seems to lump this claim together with McReynolds' claims related to the effects of setting aside the probated Will discussed earlier. However, there is evidence that the Chancery Court removed McReynolds as Administratrix for reasons independent of the setting aside the probate of the Will. In its May 15, 2015 Order, the Chancery Court ordered that "McReynolds is hereby removed as Administratrix of this Estate, for her failure to comply with all aspects of this

Court's Judgment of April 9, 2013[.]" Order [128-10] at 2. At the May 7, 2015 hearing, the Chancery Court informed McReynolds that she was being removed due to her failure to comply with the court's orders in the April 9, 2013 Judgment, such as retaining the services of an appraiser and preparing an inventory. Hearing Tr. [128-11] at 6-8, 11. Similarly, Matthews testified that McReynolds was removed as Administratrix in part because no inventory had been filed, she failed to comply with the court's April 9, 2013 Judgment, and she failed to liquidate Dick's investment funds. Def. Dep. [128-4] at 87. Williford opines that Matthews failed to advise and assist McReynolds in performing her required duties as Administratrix. Williford Report [128-16] at 7. A genuine dispute remains as to whether Matthews proximately caused McReynolds to be removed as Administratrix. The Court will deny summary judgment on the question of whether Matthews proximately caused the effects of the Chancery Court setting aside the probate, McReynolds being removed as Administratrix, and the Will contests not being time-barred.

> b. <u>McReynolds' Claim for Lost Income and Dividends Caused by Liquidation of Dick's Investments</u>

McReynolds contends that Matthews negligently liquidated Dick's investments to cash and deposited them into the Chancery Court's registry, where the Estate received no investment income. Am. Compl. [14] at 10; Hines Report [120-25] at 8. The Amended Complaint alleges that but for Matthews' negligence, "Dick's estate would have earned a substantial amount of income and dividends from June 16, 2015 through the closing of the Estate." Am. Compl. [14] at 11. Matthews argues that because he was terminated on March 3, 2015, the proximate

cause of any alleged loss of income and dividends beginning on June 16, 2015, cannot be attributed to Matthews because an attorney-client relationship did not exist. Defs.' Mem. [122] at 17. In response, McReynolds now takes the position that Dick's investment account was liquidated to cash on February 11, 2015, prior to Matthews' termination, and that but for Matthews' negligence, the account would have earned interest and dividend income from February 11, 2015, to August 1, 2016. Pl.'s Mem. [129] at 26.

Mississippi law requires that the administratrix "shall give bond in a penalty equal to the value of all the personal estate, with such sureties as may be approved by the court or clerk, payable to the state[.]" Miss. Code Ann. § 91-7-67. As Dick noted in his Will, Dick's brokerage account was worth over $2 million. Will [120-5]. The Amended Petition for Probate, drafted and filed by Matthews on April 8, 2013, requested "an order be entered directing financial institutions to tender to the Registry of the Court of Pearl River County, Mississippi, any and all sums in their hands in lieu of your Petitioner filing a bond for those substantial assets." Am. Pet. [128-6] at 2. The April 9, 2013 Judgment accordingly directed all of Dick's "mutual funds, stocks, bonds, or cash assets" to be liquidated and tendered to the Chancery Court's Registry "[i]n lieu of additional bond." April 9, 2013 Judgment [128-7] at 2.

The record reflects that the actual date of liquidation of these assets appears to be the subject of some dispute. McReynolds' financial expert, Joseph Hines, states that Matthews sent a letter to James Hartman, Dick's investment advisor at Merrill Lynch, dated December 12, 2014, which "was accompanied by the

24

documents that Merrill Lynch required in order to commence a liquidation of the Estate's account." Hines Report [120-25] at 43. In that letter, Matthews allegedly instructed Hartman to "immediately liquidate any and all funds held by Merrill Lynch" and to transmit such funds to the Chancery Court's registry. *Id.* Hines opines that "the Estate's Merrill Lynch account was ultimately liquidated . . . on 2-11-15, with the account . . . reflecting a total cash value at month-end (i.e., 2-28-15) of $2,539,200.24." *Id.*

However, according to Hines, "[t]he planned transfer of all funds in the Merrill Lynch account finally took place in June, 2015, at which time funds totaling $2,543,286.41 were transferred to the custody of the Pearl River Chancery Court Registry." *Id.* It is undisputed that Matthews was no longer McReynolds' counsel by June 2015. As of the date of the Chancery Court's May 15, 2015 Order, the court noted that "no funds relating to this case have been tendered into the Court Registry." Order [120-20] at 2. At that time, the court also ordered Patrick Zachary, the new Administrator, to liquidate all of Dick's financial assets and tender them into the court's registry. *Id.* at 4. On June 16, 2015, Merrill Lynch tendered a check in the amount of $2,542,643.82, which was more than was in the account on February 11, 2015, and which Zachary deposited into the Chancery Court's registry. Inventory [128-2] at 2, 5-7.

The foregoing raises serious questions about whether McReynolds will be able to establish at trial how Matthews was the proximate cause of any damages relating to the liquidation of Dick's investments, or whether there were any such

damages at all. Nevertheless, because the evidence establishes a conflict as to when and who liquidated Dick's brokerage account, viewing the evidence in the light most favorable to McReynolds, as the Court must at this stage, McReynolds has shown that a genuine issue of material fact exists as to this issue.

While the Amended Complaint pled that these damages accrued from June 16, 2015, McReynolds now claims the damages began on February 11, 2015. This discrepancy is not by itself sufficient to warrant summary judgment in Matthews' favor. "Any variance between the time and place alleged in the complaint and the proof at trial will be governed by the provision in Rule 15(b) for amendments to conform to the evidence." 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1308 (3d ed. 2017); *see also Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1437 (9th Cir. 1984) (holding trial court did not err in denying motion to limit damages to the sum set forth in the pleadings).

Matthews also asserts that McReynolds, through new counsel, should have petitioned the Chancery Court to request that the investment funds remain in a brokerage account. However, Matthews has not met his summary judgment burden on this point. An injured party has a duty to mitigate damages, but a "standard of reasonableness applies" to that duty. *R. McKnight & Son v. C & I Entm't*, 100 So. 3d 1022, 1028 (Miss. Ct. App. 2012). The injured party need only make "reasonable efforts," "take reasonable precautions," and "make reasonable expenditures" to lessen the resulting damage. *Hudson v. Farrish Gravel Co.*, 279 So. 2d 630, 634-35 (Miss. 1973) (quoting 15 Am. Jur. Damages § 40, at 439 (1938)). These are

inherently factual inquiries, and Matthews has not shown the absence of a genuine dispute of material fact as to whether it would have been reasonable for McReynolds to move the Estate's funds from the Chancery Court's registry back into Dick's investment account, especially in light of the facts that McReynolds likely would have had to "give bond in a penalty equal to the value of all the personal estate," Miss. Code Ann. § 91-7-67, and that she was removed as Administratrix in May 2015. The reasonableness of McReynolds' efforts to mitigate her damages will be an issue for the jury to determine.

      c.    <u>McReynolds' Claim that Matthews Caused the Estate to Incur Higher Taxes by Declaring Dick a Mississippi Resident</u>

Williford opines that Matthews negligently declared Dick a Mississippi resident, rather than a Florida resident, for tax purposes, causing the Estate to incur higher taxes, as Florida does not have a state income tax. Williford Report [128-16] at 12-13. Matthews moves for summary judgment on this claim on grounds that McReynolds cannot now claim Dick was a Florida resident at the time of his death since McReynolds testified in open court in the Estate proceeding that Dick was a Mississippi resident. Defs.' Mem. [122] at 18.

McReynolds attests that the day she hired Matthews, she provided him a copy of Dick's July 2012 Merrill Lynch brokerage statement, and soon after, she supplied him with copies of Dick's federal tax returns for 2008, 2009, 2010, and 2011. Pl. Aff. [128-8] at ¶ 12-13. McReynolds states that both the Merrill Lynch statement and the tax returns reflected Dick's address as a Florida address. *Id.* at ¶ 14. Matthews filed the Amended Petition for Probate on April 8, 2013, which

stated that Dick was a Mississippi resident. *See* Am. Pet. for Probate [128-6] at 1.

Williford opines that this filing subjected the Estate to income taxes from the State

of Mississippi. Williford Report [128-16] at 12-13. Williford further states that

Florida does not have a state income tax. *Id.* at 13. It was not until the hearing on

May 7, 2015, that McReynolds testified that Dick was a Mississippi resident.

Hearing Tr. [128-11] at 20-21. This was years after Matthews filed the Amended

Petition for Probate and months after McReynolds terminated Matthews. A

question of fact exists as to whether Dick was a resident of Mississippi or Florida,

and if the latter, whether Matthews was negligent in declaring him to be a

Mississippi resident. Matthews' Motion for Summary Judgment will be denied as

this claim.

> d. <u>McReynolds' Claim that Matthews Caused Penalties for Filing the Estate's Tax Returns Late</u>

Matthews moves for summary judgment on McReynolds' claim that but for

Matthews negligently failing to advise and assist McReynolds in timely filing

income tax returns, the Estate would not have incurred penalties for late filings.

Defs.' Mem. [122] at 18-19. Matthews claims that whether he was negligent in

assisting McReynolds in filing tax returns requires expert testimony on the

standard of care and whether he breached it, and that McReynolds has proffered

neither. *Id.* However, Williford testified that an attorney should be aware of when

tax returns are due and provide advice to an administratrix regarding the necessity

of filing tax returns. Williford Dep. [128-20] at 19. He has also opined that "it

appears that certain tax returns were not filed timely." *Id.* at 18. This is sufficient

to create a jury question on whether Matthews breached the standard of care, and Matthews is not entitled to summary judgment on this claim.

2.      McReynolds' Standard of Conduct/Breach of Fiduciary Duty Claims

To establish a legal-malpractice claim based on an alleged breach of fiduciary duty, a plaintiff must prove: "(1) the existence of an attorney-client relationship; (2) the acts constituting a violation of the attorney's fiduciary duty; (3) that the breach proximately caused the injury; and (4) the fact and extent of the injury." *Crist*, 65 So. 3d at 843.

> The duty of loyalty is fiduciary in nature. In the present context its breach may take one of two forms. The first involves situations in which the attorney obtains an unfair personal advantage, such as acquiring property from a client; the second involves situations in which the attorney or other clients have interests adverse to the client in question. We have recently defined the lawyer's duty of loyalty to include a duty to: safeguard the client's confidences and property, avoid conflicting interests that might impair the representation, and not employ adversely to the client[] powers conferred by the client-lawyer relationship.

*Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474, 486 (Miss. 2010) (citations omitted) (format altered).

"[A]n attorney's breach of his fiduciary duties to his client may cause injury to the client entirely separate from the merits of the underlying case." *Crist*, 65 So. 3d at 843. Therefore, "the proof of proximate cause in such cases is to be tailored to the injury the client claims and the remedy he elects." *Id.* at 842 (citation and quotation marks omitted).

a.     <u>Income Taxes and Liquidation of the Investment Account</u>

Williford opines that Matthews breached the standard of conduct by failing to advise McReynolds to declare Dick a Florida resident for tax purposes and by requesting that the Chancery Court order Dick's investments liquidated. Williford Report [128-16] at 16. Matthews argues that these allegations are insufficient as a matter of law to support a breach of fiduciary duty claim. Defs.' Mem. [122] at 20. The Court agrees. McReynolds has not alleged how, or produced any evidence to show that, these complained of acts conferred upon him an unfair personal advantage, created an adverse interest, or breached confidentiality. Without more, this is not a sufficient legal or evidentiary basis to support a breach of the standard of conduct claim. Matthews is entitled to summary judgment on this claim.

b.     <u>Communications with Dick's Half-Brother</u>

Matthews moves for summary judgment on McReynolds' claim that Matthews breached his fiduciary duty by informing Charles Dick of the existence of Jack Dick's Estate and of its value. Matthews posits that the Estate's value was public record and thus Matthews did not disclose any "confidential" information. Defs.' Mem. [122] at 21. Matthews also argues that McReynolds has failed to show that any alleged breach of fiduciary duty was the proximate cause of any of her damages. *Id.* McReynolds counters that there is no evidence that Charles Dick was aware of the size of Dick's estate until Matthews revealed that information. Pl.'s Mem. [129] at 30.

It is undisputed that the Will was filed in the Chancery Court and that Dick wrote on the Will the value of his Estate. Will [120-5]. Whether or not Charles Dick was aware of the Estate's value, McReynolds has not shown how this information was confidential. Furthermore, McReynolds has produced no evidence that the disclosure of this information proximately caused Charles Dick to file the contest. Matthews disclosed this information in April 2013, and Charles Dick did not initiate his Will contest until October 13, 2015, after the Chancery Court issued a summons to Charles and notified him of the June 11, 2015 Petition to Probate Will in Solemn Form. Williford Report [128-16] at 4. McReynolds has not demonstrated that a genuine issue of material fact precludes summary judgment on this claim.

3.    <u>McReynolds' Claims for Damages</u>

a.    <u>Attorneys' Fees Paid to Johnson in Estate Proceedings</u>

McReynolds claims damages of $794,900.80 in attorneys' fees paid to Johnson for her representation of McReynolds in the Estate proceedings. Hines Report [120-25] at 14. Matthews contends that because McReynolds cannot present any admissible evidence that these fees were reasonable, Matthews is entitled to summary judgment. Defs.' Mem. [122] at 9-11. McReynolds responds that reasonableness is not an element she must prove, but even if it is, she can rebut Matthews' argument that the fees were unreasonable through her experts Williford and Corlew. Pl.'s Mem. [129] at 17-20.

In Mississippi, the burden is on a plaintiff seeking attorneys' fees as damages to prove the reasonableness of the fees. Mississippi cases

> make clear that an attorneys fee claim has factual components that must be proved. One of those components is the customary charge in the community. If this is so where the trial judge is the fact finder, it is more so where the facts are to be found by a jury. Jurors may not be presumed to know what fees are reasonable and necessary.
>
> *Where the question of an award of attorneys fees is being submitted to the jury as the trier of fact, the party seeking the fee must prove, inter alia, the reasonable necessity of the rendering of the services and spending the amount of time for which the fee is charged, as well as the reasonableness of the hourly rate.* Frequently this is done by the calling of another attorney in the community who is familiar with the type of case and the rates customarily charged for similar services and who then provides the necessary opinion testimony. Such proof may also be made by the attorney whose fee is claimed. So long as a proper foundation is laid, the attorney representing the fee applicant or any other attorney may provide the evidentiary foundation for reasonableness and necessity. *Absent such foundation, however, the jury is necessarily left to guess and speculate.*

*Clark v. Whiten*, 508 So. 2d 1105, 1108-09 (Miss. 1987) (citations, quotation marks, and footnote omitted) (emphasis added).

Thus, under Mississippi law, a showing of reasonableness is an essential element of McReynolds' damages claim for attorneys' fees. McReynolds has not come forward with significant probative evidence that there exists a genuine issue of material fact regarding the reasonableness of these attorneys' fees. While McReynolds points to Corlew's and Williford's opinions on this issue, the Court previously struck Corlew's opinions and Williford's Second Report as to the reasonableness of attorneys' fees. Order [140]. Moreover, McReynolds has not put forth any other evidence, such as testimony or an affidavit from Johnson, that the attorneys' fees were reasonable. Without evidence of the reasonableness of these

fees, McReynolds cannot withstand Matthews' Motion for Summary Judgment as to these attorneys' fees.

      b.    <u>Punitive Damages</u>

Matthews contends that "McReynolds has no clear and convincing evidence that Matthews acted with malice, gross neglect or reckless disregard in his handling of the Jack Dick Estate and therefore cannot sustain a claim for punitive damages as a matter of law." Defs.' Mem. [122] at 23. McReynolds argues that "[f]or more than two years, Matthews failed to complete Dick's estate despite repeated pleas by [McReynolds] for seven months when she was in dire financial need of the monies bequeathed to her by Dick's Will in order to avoid foreclosure of her childhood home." Pl.'s Mem. [129] at 33.

"Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Warren v. Derivaux*, 996 So. 2d 729, 738 (Miss. 2008) (citation and quotation marks omitted). "Punitive damages are appropriate only in cases where the plaintiff shows by clear and convincing evidence that the defendant acted with malice, gross negligence evidencing willful, wanton, or reckless disregard for the safety of others, or the commission of actual fraud." *Gray v. Framme Law Firm of MS, P.C.*, 141 So. 3d 430, 435 (Miss. Ct. App. 2013) (citation omitted). "Gross negligence is that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Dame v. Estes,* 101 So. 2d 644, 645 (Miss. 1958).

McReynolds asserts that after October 2013, she "had minimal communications with Matthews despite my numerous attempts to communicate with him." Pl. Aff. [128-8] at ¶ 4. McReynolds testified at her deposition that "I would call him, but I could never reach him. I mean, I have email after email after email please call me, text after text after text, call after call after call. And he wouldn't even respond back. It would be his paralegal." May 23, 2017 Pl. Dep. [128-1] at 116-17. McReynolds testified that she had supplied to her counsel with all emails available to her that she sent to Matthews and "any that had any responses or no responses at all." *Id.* at 117-18.

The Court's review of the emails, which McReynolds has attached as Exhibit "A" to her affidavit submitted in support of her response to Matthews' Motion, does not reveal a lack of exertion or effort so substantial on Matthews' part that would be sufficient to support a claim for punitive damages. For example, on August 18, 2014, McReynolds emailed Matthews and asked what type of information Matthews needed regarding Dick's vehicles. Pl. Aff. Ex. A [128-8] at 8. Matthews replied the following morning, "[i]t was my understanding that you and your sister were coming last Friday. I had the real estate appraiser on standby to go and look at the house. I need to know where the key is to the house so that I can personally take the real estate appraiser to look at the house." *Id.* Matthews further indicated that he had corrected the Merrill Lynch documents and was returning them to McReynolds, and asked McReynolds to sign the documents and verify her current address. *Id.* Matthews also instructed McReynolds what information and type of

photographs he needed of Dick's vehicles. *Id.* Matthews closed by asking McReynolds to confirm receipt of the email with a reply. *Id.*

On November 7, 2014, McReynolds emailed Matthews to check on the Estate "because I received a letter about the house and I assume it is because it has been a year since the foreclosure process began and I am very afraid I will lose this home." *Id.* On December 12, 2014, McReynolds emailed and asked Matthews to call her. *Id.* at 11. Matthews responded two hours later and informed her that the appraisal on the property came back, that he would have the other appraisals momentarily, and that the final account and adjudication of heirship would be ready for McReynolds' signature towards the end of the following week. *Id.* McReynolds emailed Matthews on December 22, 2014, asking to set up an appointment to sign the paperwork Matthews had previously mentioned. *Id.* The last email is dated February 2, 2015, in which McReynolds states the "property left to" her had been sold and she is "trying to find out how to get these taxes paid." *Id.* at 12. McReynolds stated that she felt abandoned and did not know why Matthews would not contact her. *Id.*

This undisputed evidence shows that Matthews worked towards administering the Estate and answered some of McReynolds' inquiries. McReynolds also admits that Matthews' paralegal returned some of her calls. McReynolds may have been dissatisfied with Matthews' representation and a jury might ultimately conclude that Matthews was negligent. However, McReynolds has not proffered sufficient summary judgment evidence to carry her much higher burden at trial on

a punitive damages claim, which is to show by clear and convincing evidence that Matthews' conduct rose to the level of gross negligence and a reckless indifference to consequences without the exertion of any substantial effort to avoid them. No reasonable juror could reach such a conclusion based upon the evidence submitted by McReynolds.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants' Motion [120] for Summary Judgment is **GRANTED IN PART** as to Plaintiff's: (1) breach of the standard of conduct claims; (2) claim for damages in attorneys' fees paid to the Law Office of B. Ruth Johnson in the underlying Estate proceedings; and (3) claim for punitive damages. These claims are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion is **DENIED IN PART** as to Plaintiff's: (1) breach of the standard of care claim that Defendants' alleged negligence caused the Will contests to not be time-barred; (2) breach of the standard of care claim that Defendants' negligence caused her to be removed as Administratrix; (3) breach of the standard of care claim for lost income caused by liquidation of Dick's investments; (4) breach of the standard of care claim that Matthews caused the Estate to incur higher taxes by declaring Dick a Mississippi resident; and (5) breach of the standard of care claim that Matthews caused penalties to be incurred due to the late filing of the Estate's tax returns.

These claims will proceed to trial.

**SO ORDERED AND ADJUDGED**, this the 3rd day of January, 2018.

_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE